UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIA'S, INC., d/b/a ANTONIA'S PIZZERIA, and LEE SOTIROPOULOS,<br><br>Defendants. | Civil Action No. |

## **COMPLAINT**

This case concerns employers who have repeatedly attempted to dissuade their employees from providing truthful information to representatives of Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor (the "Secretary"). Based on the employers' unlawful activity, the Secretary brings this action under the Fair Labor Standards Act (the "FLSA") to restrain Defendants Antonia's Inc., d/b/a Antonia's Pizzeria, and Lee Sotiropoulos from retaliating against employees and their families in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).

In early November 2022, the Wage and Hour Division of the United States Department of Labor (the "WHD") initiated an investigation to determine Defendants' compliance with the FLSA. During the course of that investigation, Defendants have urged current and former employees not to respond to the WHD's requests for information or to provide false information concerning their work schedule and wages to the WHD. And in at least one instance, Defendants offered a bribe to a former employee, Aliyah Palmer, in exchange for Palmer "sticking up" for Defendants in the investigation and doing Palmer's part to ensure the investigation resolved

favorably for Defendants. As a result of Defendants' conduct, Palmer, along with the rest of Defendants' workforce, are at risk of being deterred from exercising their rights under the FLSA and the Secretary's ability to investigate and address violations of the FLSA is at risk of being undermined.

The Secretary, therefore, seeks from this Court an order permanently enjoining Defendants and those acting on their behalf from violating the anti-retaliation provision of the FLSA by engaging in any further adverse action against current or former employees as a result of employees' protected activity under the FLSA. The Secretary also seeks punitive damages for Defendants' alarming retaliation.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the United States District Court for the District of Maine because a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Parties

3. Plaintiff Martin J. Walsh, Secretary of Labor, Department of Labor, is authorized to bring actions to restrain violations of the anti-retaliation provision and other provisions of the FLSA. *See* 29 U.S.C. §§ 211(a), 215(a)(3), 216(b), 216(c), and 217. The Secretary is the proper plaintiff in this action.

4. Defendant Antonia's, Inc. ("Antonia's") is a Maine corporation with a principal business address of 193 Lower Main Street, Freeport ME 04032. Antonia's operates a restaurant at this location under the name "Antonia's Pizzeria."

5. Defendant Lee Sotiropoulos is a manager or agent of Antonia's.

6. At all relevant times, Defendant Sotiropoulos actively managed and directed the day-to-day operations of Antonia's Pizzeria.

7. At all relevant times, Defendant Sotiropoulos had authority to supervise the employees of Antonia's.

8. At all relevant times, Defendant Sotiropoulos had authority to set policies concerning the wages and working time of Antonia's employees.

### Aliyah Palmer's Employment

9. From approximately April 2021 through August 2022, Aliyah Palmer worked for Defendants as a cook.

10. During that time period, Palmer was an employee, as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

11. Defendant Sotiropoulos supervised Palmer.

12. During the entirety of Palmer's employment at Antonia's, Palmer regularly worked in excess of 40 hours per week.

13. During the entirety of Palmer's employment at Antonia's, Palmer would often work up to 60 hours per week.

14. During the entirety of Palmer's employment, Palmer never received one and one-half times Palmer's regular rate of pay from Defendants for hours worked over 40 in a week.

15. Defendants always paid Palmer wages at Palmer's straight-time rate of pay, including for overtime hours worked.

16. When Palmer worked overtime hours, those hours would not appear on Palmer's weekly paystub.

17. The wages Palmer received from Defendants for overtime hours worked, which were paid at the regular rate of pay, appeared on Palmer's paystub as a "bonus."

### The WHD Investigation

18. In early November 2022, WHD's Northern New England District Office initiated an investigation into Defendants' compliance with the FLSA.

19. WHD initiated the investigation by dispatching two Wage and Hour Investigators to the restaurant to perform a site visit.

20. When the investigators arrived at Antonia's Pizza to conduct their initial site visit, they spoke with Sotiropoulos, who would not permit them to interview any employees that day.

21. Although Defendants ultimately permitted WHD to conduct interviews of some employees on site at Antonia's Pizzeria, Defendants interfered with WHD's ability to arrange employee interviews by phone.

22. In response to a WHD request for employee phone numbers, Defendants initially refused to provide phone numbers for all employees.

23. Defendants provided a list of employee contacts that WHD knew was incomplete because the list omitted the names and contact information for a group of employees who lived in an employer-provided apartment located above Antonia's Pizzeria.

### Defendants Retaliated Against Palmer and Other Employees

24. In late November 2022, around the same time the WHD sought the employee contact list from Defendants, WHD conducted interviews with two former Antonia's employees.

25. Those employees told WHD they had received instructions from Defendant Sotiropoulos not to cooperate with the WHD's investigation.

26. One of these two former Antonia's employees was Aliyah Palmer.

27. A few weeks prior to Palmer's interview with WHD, Palmer received an unprompted phone call from Defendant Sotiropoulos.

28. Palmer ignored Defendant Sotiropoulos' phone call, as they had not spoken since Palmer left Antonia's in August 2022.

29. When Defendant Sotiropoulos called again a little while later, Palmer picked up the phone.

30. During this phone conversation, Defendant Sotiropoulos informed Palmer that an investigator from the Department of Labor may be reaching out to Palmer concerning the pay practices at Antonia's.

31. Defendant Sotiropoulos blamed the investigation on a former employee Sotiropoulos believed called in the complaint.

32. Defendant Sotiropoulos told Palmer that if an investigator called, Palmer should say that Palmer only worked 40 hours per week, never worked overtime, and only received bonuses sporadically in connection with their work performance, rather than as payment for overtime hours.

33. At the end of the conversation, Defendant Sotiropoulos mentioned having calculated the amount of overtime that Sotiropoulos believed Palmer was owed as about $500.00.

34. Defendant Sotiropoulos promised to send Palmer a check for this amount before Christmas if Palmer "stuck up for" Defendants during the investigation and if the investigation resolved favorably for Defendants.

35. Defendant Sotiropoulos also made comments to Palmer during this conversation about being a "family man," running Antonia's like a "family business," and experiencing considerable stress as a result of the investigation.

36. Palmer felt guilty about the prospect of disobeying Sotiropoulos's instructions as a result of these comments.

37. Defendant Sotiropoulos further stated to Palmer that they were calling other Antonia's employees concerning the investigation.

38. During Palmer's interview with WHD, Palmer initially followed Sotiropoulos's instructions.

39. Palmer initially told WHD that Palmer never worked more than 40 hours in a workweek and made no mention of the instructions Palmer received from Sotiropoulos.

40. Immediately after the interview with WHD ended, Palmer felt guilty for not having told the truth.

41. Palmer called WHD back about five minutes later to inform WHD that Sotiropoulos had previously instructed Palmer to lie and offered Palmer money in exchange for providing WHD with untruthful information.

42. At that time, Palmer also provided WHD with a truthful summary of Palmer's work history as well as truthful information concerning the manner in which Palmer was paid.

43. Palmer told WHD at that time that Palmer did work overtime hours at Antonia's and was paid at Palmer's straight-time rate for overtime hour worked.

44. At some point after Palmer's interview with WHD, Sotiropoulos followed up with Palmer by text messages to ask whether or not Palmer had been contacted by an investigator.

45. Palmer responded by denying being in contact with WHD.

**WHD Uncovers Further Evidence of Retaliation**

46. As a result of Defendants' efforts to impede WHD's contact with employees as well as what WHD learned about the instructions employees received not to cooperate with WHD's investigation, WHD requested Defendants permit WHD to visit Antonia's Pizzeria to read a statement of FLSA rights to employees at the restaurant during business hours.

47. WHD visited Antonia's Pizzeria on December 2, 2022 to read the statement of FLSA rights to employees.

48. Immediately after reading the statement, and in the ensuing days, WHD continued to interview Defendants' employees.

49. During this period, WHD learned from an Antonia's employee that Sotiropoulos had instructed the employee not to tell WHD their work schedule.

50. Sotiropoulos also instructed this employee to give WHD false information concerning the employee's hourly wage rate.

51. Sotiropoulos warned this employee that WHD's investigation could economically harm the restaurant.

52. This employee understood Sotiropoulos's instructions that employees withhold or provide false information to WHD to remain unchanged after WHD's December 2, 2022 reading of the statement of rights at Antonia's.

53. In other employee interviews WHD conducted, multiple Antonia's employees gave the false information concerning their hourly wage rate that Sotiropoulos instructed the employee referenced in Paragraphs 49 to 52 to give WHD.

54. Sotiropoulos also directly said to a WHD investigator that the hourly wage rate of the employees referenced in Paragraphs 49 to 52 was the false rate Sotiropoulos instructed the employee referenced in Paragraphs 49 to 52 to give WHD.

55. Sotiropoulos continued to communicate with, or attempted to communicate with, multiple Antonia's employees concerning WHD's investigation through December 2022 and January 2023.

56. In some of these conversations, Sotiropoulos told employees that they know which employee complained to the Department of Labor.

57. In some of these conversations, Sotiropoulos has continued to say that WHD's investigation would economically harm the restaurant.

58. Sotiropoulos has repeatedly claimed in direct conversations with WHD to know the identity of the specific employee who complained to the Department of Labor.

59. Sotiropoulos told WHD on January 17, 2023 that he wanted to call former Antonia's employees and talk to them about their wages.

60. WHD advised Sotiropoulos not to say anything to employees that could be construed as an attempt to influence their testimony to WHD.

61. Sotiropoulos contacted former Antonia's employees, including Aliyah Palmer, that same evening, January 17, 2023.

62. Palmer did not pick up the phone in response to Sotiropoulos' call on January 17, 2023.

63. When Palmer did not pick up, Sotiropoulos followed up with several text messages.

64. Palmer did not answer Sotiropoulos' phone call on January 17 and ultimately stopped responding to Sotiropoulos' attempts to communicate via text message because Palmer did not wish to speak with Sotiropoulos concerning the investigation.

65. For the same reason, Palmer has declined subsequent text message requests Sotiropoulos has made to speak over the phone.

## COUNT ONE
### (Violation of the Anti-Retaliation Provision of the FLSA, 29 U.S.C. § 215(a)(3))

66. The Secretary incorporates by reference and re-alleges all foregoing allegations in the Complaint.

67. Section 15(a)(3) prohibits retaliation against employees and former employees because they assert their rights under the FLSA. The provision prohibits, among other things, "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee . . . has testified or is about to testify in any . . . proceeding" under the Act. 29 U.S.C. § 215(a)(3).

68. In violation of Section 15(a)(3) of the FLSA, Defendants have retaliated against Palmer and other employees who were cooperating, or were about to cooperate, with WHD's investigation by instructing these employees to withhold or provide false information concerning their wages and work schedules to WHD investigators.

69. Defendants engaged in this adverse action against Palmer and other employees because they believed these employees were about to provide information to the Wage and Hour Division.

70. As a result of Defendants' actions, a reasonable employee would be dissuaded from engaging in activities protected under the FLSA, such as cooperating with an investigation by the Secretary into violations of the FLSA.

## **PRAYER FOR RELIEF**

WHEREFORE, cause having been shown, the Secretary respectfully prays that this Court enter judgment against Defendants and provide the following relief:

a. An order issued pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from violating the provisions of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), including by threatening, harassing, or intimidating any current or former employee because the employee engaged in protected activity under the FLSA;

b. An order awarding punitive damages for Defendants' retaliation in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3);

c. An order awarding the Secretary all costs of this action; and

d. An order awarding the Secretary with any other relief that the Court deems necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Secretary requests a jury trial in this matter on all issues triable by jury.

| | |
|---|---|
| Post Office Address: | Seema Nanda<br>Solicitor of Labor |
| U.S. Department of Labor<br>Office of the Solicitor<br>John F. Kennedy Federal Building<br>Room E-375<br>Boston, MA 02203<br>TEL: (617) 565-2500<br>FAX: (617) 565-2142 | Maia S. Fisher<br>Regional Solicitor<br><br>Mark A. Pedulla<br>Wage and Hour Counsel<br><br><u>/s/ Joseph Michalakes</u><br>Joseph Michalakes<br>Trial Attorney |
| Date: February 16, 2023 | Michalakes.Joseph.J@dol.gov<br>MA BBO No. 696740<br><br>U.S. Department of Labor<br>Attorneys for Plaintiff |